UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>                v.<br><br>DIAMOND DEALERS CLUB, INC. and<br>DIAMOND CENTER, INC.,<br>    Defendants. | 1:20-mc-483<br><br>(Original Civil Action No. 1136) |

**THE UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO TERMINATE A LEGACY ANTITRUST JUDGMENT**

Plaintiff, United States of America ("United States"), respectfully submits this memorandum of law in support of its motion to terminate the legacy antitrust judgment in the above-captioned case pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The judgment was entered by this Court in 1955 and is 65 years old. The United States has concluded that because of its age and changed circumstances since its entry, the judgment no longer serves to protect competition. The United States gave the public notice and the opportunity to comment on its intent to seek termination of this judgment; it received no comments opposing termination.[1] For this and other reasons explained below, the United States requests that the judgment be terminated.

---

[1] The Antitrust Division contacted Diamond Dealer Club, Inc. regarding this motion, and the company had no objection to it. Diamond Center, Inc., after several name changes, dissolved its New York incorporation in 2001. *See Declaration of Barry L. Creech.*

**I.     BACKGROUND**

From 1890, when the antitrust laws were first enacted, until the late 1970s, the United States frequently sought entry of antitrust judgments whose terms never expired.[2] Such perpetual judgments were the norm until 1979, when the Antitrust Division of the United States Department of Justice ("Antitrust Division") adopted the practice of including a ten-year term limit in nearly all of its antitrust judgments. Perpetual judgments entered before the policy change, however, remain in effect indefinitely unless a court terminates them. Although a defendant may move a court to terminate a perpetual judgment, few defendants have done so. There are many possible reasons for this, including defendants may not have been willing to bear the costs and time resources to seek termination, defendants may have lost track of decades-old judgments, individual defendants may have passed away, or company defendants may have gone out of business. As a result, hundreds of these legacy judgments remain open on the dockets of courts around the country.

The Antitrust Division's Judgment Termination Initiative seeks to review all of its outstanding perpetual antitrust judgments and, when appropriate, seek termination of legacy judgments. The Antitrust Division described the initiative in a statement published in the Federal Register.[3] In addition, the Antitrust Division established a website to keep the public informed of its efforts to terminate perpetual judgments that no longer serve to protect

---

[2] The primary antitrust laws are the Sherman Act, 15 U.S.C. §§ 1–7, and the Clayton Act, 15 U.S.C. §§ 12–27. The judgment the United States seeks to terminate with this motion concerns violations of the Sherman Act.

[3] Department of Justice's Initiative to Seek Termination of Legacy Antitrust Judgments, 83 Fed. Reg. 19,837 (May 4, 2018), https://www.gpo.gov/fdsys/granule/FR-2018-05-04/2018-09461.

competition.[4] The United States believes that outstanding perpetual antitrust judgments presumptively should be terminated; nevertheless, the Antitrust Division is examining each judgment to ensure that it is suitable for termination. The Antitrust Division is giving the public notice of—and the opportunity to comment on—its intention to seek termination of perpetual judgments.

In brief, the process the United States is following to determine whether to move to terminate a perpetual antitrust judgment is as follows:

- The Antitrust Division reviews each perpetual judgment to determine whether it no longer serves to protect competition such that termination would be appropriate.

- If the Antitrust Division determines a judgment is suitable for termination, it posts the case name and the judgment on its public Judgment Termination Initiative website, https://www.justice.gov/atr/JudgmentTermination.

- The public is given the opportunity to comment on each proposed termination within thirty days of the date the case name and judgment are posted to the public website.

- Following review of any public comments received, the Antitrust Division determines whether the judgment still warrants termination; if so, the United States moves to terminate it.

The United States followed this process for the above-captioned judgment.[5]

The remainder of this motion is organized as follows: Section II describes the Court's jurisdiction to terminate the judgment and the applicable legal standards for terminating the judgment. Section III demonstrates that perpetual judgments rarely serve to protect competition and that those that are more than ten years old presumptively should be terminated. Section III

---

[4] *Judgment Termination Initiative*, U.S. DEP'T OF JUSTICE, https://www.justice.gov/atr/JudgmentTermination.

[5] The United States followed this process to move almost 80 total district courts to terminate legacy antitrust judgments. To date, all districts considering these matters, including the Southern District of New York, have terminated legacy judgments upon motion, and no court has denied a motion to terminate. *See infra*.

also discusses specific circumstances justifying termination. Exhibit A attaches a copy of the judgment that the United States seeks to terminate with this motion. A proposed order terminating the judgment also accompanies this motion.

## II. APPLICABLE LEGAL STANDARDS FOR TERMINATING THE JUDGMENT

This Court has jurisdiction and authority to terminate the judgment. The judgment provides that the Court retains jurisdiction. In addition, the Federal Rules of Civil Procedure grant the Court authority to terminate the judgment. According to Rule 60(b)(5) and 60(b)(6), "[o]n motion and just terms, the court may relieve a party . . . from a final judgment . . . (5) [when] applying it prospectively is no longer equitable; or (6) for any other reason that justifies relief."[6] Fed. R. Civ. P. 60(b)(5)–(6); *accord Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441 (2004) (explaining that Rule 60(b)(5) "encompasses the traditional power of a court of equity to modify its decree in light of changed circumstances" and that "district courts should apply a 'flexible standard' to the modification of consent decrees when a significant change in facts or law warrants their amendment") (citation omitted); *see also United States v. Eastman Kodak Co.*, 63 F.3d 95, 101 (2d Cir. 1995) ("[T]he power of a court to modify or terminate a consent decree is, at bottom, guided by equitable considerations.").

---

[6] Although the Tunney Act governs the procedures for judicial approval of consent decrees filed by the Antitrust Division, by its terms, it is not applicable to consent decree termination proceedings. Nevertheless, the Second Circuit has held that the Tunney Act can provide "useful guidance" to the court with respect to decree terminations. *See United States v. American Cyanamid Co.*, 719 F.2d 558, 565 n.7 (2d Cir. 1983). The Tunney Act does not require a court to conduct an evidentiary hearing, 15 U.S.C. § 16(e)(2). As described in this memorandum, in light of the 65 years that have passed since this Court entered this final judgment and the changed circumstances since its entry, the United States does not believe that it is necessary for this Court to make an extensive inquiry into the facts of this final judgment in order to terminate it under Fed. R. Civ. P. 60(b)(5) or (b)(6).

Where, as here, the United States seeks to terminate an antitrust judgment, the court, exercising judicial supervision, should approve a decree termination when the United States has provided a reasonable explanation to support the conclusion that termination is consistent with the public interest. *See United States v. International Business Machines Corp.*, 163 F.3d 737, 740 (2d Cir. 1998); *United States v. Loew's, Inc.*, 783 F. Supp. 211, 213 (S.D.N.Y. 1992); *United States v. Columbia Artists Mgmt., Inc.*, 662 F. Supp. 865, 869–70 (S.D.N.Y. 1987). *See also United States v. Western Elec. Co.*, 900 F.2d 283, 307 (D.C. Cir. 1990) (a court should approve a termination "so long as the resulting array of rights and obligations is within the zone of settlements consonant with the public interest today"); *United States v. Western Elec. Co.*, 993 F.2d 1572, 1576-77 (D.C. Cir. 1993) (under "deferential" public interest test, a court should accept a consensual termination of decree restrictions that the United States "reasonably regarded as advancing the public interest;" it is "not up to the court to reject an agreed-on change simply because the proposal diverge[s] from its view of the public interest;" rather, a court "may reject an uncontested termination only if it has exceptional confidence that adverse antitrust consequences will result.").

The purposes behind the antitrust laws inform the meaning of the term "public interest." *Id*. This Court's "public interest determination must be based on the same analysis that [it] would use to evaluate the underlying violation" — whether the present marketplace "is such" that the antitrust violation alleged in the complaint would be unlikely to recur following the decree's termination. *IBM*, 163 F.3d at 740; *see also United States v. American Cyanamid Co.*, 719 F.2d 558 (2d Cir. 1983). That evaluation necessarily is "forward-looking and probabilistic . . . focused on the *likelihood* of a potential future violation, rather than the *mere possibility* of a violation." *IBM*, 163 F.3d at 742 (emphasis added). "[T]he Department of Justice has broad

5

discretion in controlling government antitrust litigation"; thus, "[a]bsent a showing of corrupt failure of the government to discharge its duty, the Court, in making its public interest finding, should . . . carefully consider the explanations of the government. . . ." *Loew's*, 783 F. Supp. at 214 (citation omitted); *see also United States v. Paramount, Inc., et. al*, 19 Misc. 544 (AT), 2020 WL 4573069 at *3 (S.D.N.Y. Aug. 7, 2020) (same principle). "This Court may not substitute its opinion or views" for the government's when "the government consents to the termination of a decree." *Loew's*, 783 F. Supp. at 214 (citation omitted).

In that regard, if the government reasonably explains why there is "no current need for" a decree, termination would serve "the public interest . . . ." *Id.* at 213–14 (quoting *N. Pac. Ry.* v. *United States*, 356 U.S. 1, 4 (1958)). In *Loew's*, for example, the Court reasoned that "in view of the changed environment in which the [40-year-old] Judgment now operates, there is no persuasive reason for maintaining the Judgment and subjecting Loews to restrictions that do not bind other" market participants. *Id.* at 215. Recently, the Paramount decision reiterated how changes in law and fact exhibit how termination is in the public interest: "Because changes in antitrust law and administration have diminished the importance of the Decrees' restrictions, while still providing protections that will keep the probability of future violations low, the Court finds that termination of the Decrees is in the public interest." *United States v. Paramount, Inc., et. al*, 19 Misc. 544 (AT), 2020 WL 4573069 at *7 (S.D.N.Y. Aug. 7, 2020).

Given its jurisdiction and its authority, the Court may terminate a judgment for any reason that justifies relief, including that the judgment is no longer in the public interest and no longer serves its original purpose of protecting competition. This result is consistent with other courts' actions across the country when analyzing Judgment Termination Initiative motions.

Seventy-six districts have terminated about 800 legacy judgments upon similar motion. The courts span all judicial districts and include other courts both within this District and within this Circuit. *See, e.g.*, *United States v. The Wool Institute, Inc.*, Case No. 1:20-mc-00029-LGS (S.D.N.Y. Jan. 29, 2020 (terminating one judgment); *United States v. Robert E. Miller, Inc., et al.*, Case No. 1:20-mc-00020-GHW (S.D.N.Y. Jan. 14, 2020) (terminating one judgment);; *United States v. A. Schrader's Son, Inc., et al.*, Case No. 1:19-mc-01438-PKC (E.D.N.Y. Jun. 24, 2019) (terminating 14 judgments); *United States v. Alden Paper Co., et al.*, Case No. 1:19-mc-00015-DNH (N.D.N.Y. Apr. 29, 2019) (terminating five judgments); *United States v. New Departure Manufacturing Co., et al.*, Case. No. 1:19-mc-00016-LJV (W.D.N.Y. Jun. 11, 2019) (terminating 12 judgments); *United States v. County National Bank of Bennington, et al.*, Case No. 5:19-mc-00032-gwc (D. Vt. Mar. 21, 2019) (terminating one judgment).

In reviewing legacy judgments that have been the subject of the United States' motions to terminate, courts have found termination to be in the public interest for a variety of reasons, including the age of the judgment, defendant's corporate status, changed circumstances over time in markets, and lack of need due to the judgment duplicating prohibitions established under current antitrust laws. *See, e.g.*, *United States v. Paramount, Inc., et. al*, 19 Misc. 544 (AT), 2020 WL 4573069 at *7 (S.D.N.Y. Aug. 7, 2020) ("Antitrust laws, and their faithful enforcement, weigh in favor of the Court's finding that there is a low likelihood of a potential future violation absent the Decrees."); *United States v. Coal Dealers Association of California, et. al.,* Case No. 19-mc-80147-JST (N.D.CA. Jul. 19, 2019) (terminating 37 judgments because of their age, lack of need due to the judgments duplicating prohibitions under current antitrust laws, and changed circumstances. Specifically, the court noted, "Given that this motion seeks to

7

terminate judgments entered between 120 and 32 years ago and that many of the affected entities no longer exist, the Court finds the government's public comment initiative provided adequate notice under the circumstances" and that service was not necessary); *United States v. Continental Grain Co.*, 1:70-CV-6733, 2019 WL 2323875 (E. D. Tex. May 30, 2019) (terminating judgment under FRCP 60(b)(5)); *United States v. Kahn's Bakery, Inc., et al.*, 3:75-cv-00106-RPM at *6 (W.D. Tex. Mar. 26, 2019) (terminating judgment because it "no longer serves to protect competition"); *United States v. Virgin Islands Gift and Fashion Shop Ass'n, Inc., et al.*, 3:69-cv-00295-CVG-RM at *5 (D.V.I. Jun. 11, 2019) (terminating judgments, in part, because the prohibition on price fixing is duplicative of the antitrust laws and the representation by the United States that a corporate defendant no longer exists); *United States v. Anheuser-Busch, et al.*, 1:60-cv-08906-KMM at *5 (S.D. Fla. Jul. 19, 2019) (terminating judgments, in part, because of the "changes in factual and legal landscape" since their entry). Exhibit B contains the orders specifically cited above. Termination of the final judgment in this case is warranted for similar reasons as in these cases.

## III. ARGUMENT

This 65-year-old judgment no longer serves to protect competition, and it is in the public interest to terminate it. Under the provisions of the 1955 judgment in the above-captioned case, the defendants, two trade associations, were enjoined from entering into any understanding to restrict or prevent the importation of diamonds into, or the exportation of diamonds out of, the United States; hindering or preventing any diamond dealer from participating in free and unlimited trade in diamonds with any other dealer; forcing or urging any diamond dealer to reform from dealing in the services or products of any other dealer; and imposing any fine or other penalty on any member for dealing the services or products of any other dealer.

It is appropriate to terminate this judgment because it no longer serves its original purpose of protecting competition. The United States believes that this perpetual judgment presumptively should be terminated because its age alone suggests it no longer protects competition. Other reasons, however, also weigh in favor termination, including that the terms of the judgment merely prohibit that which the antitrust laws already prohibit and one of the defendants appears to no longer exist. Under such circumstances, the Court may terminate the judgment pursuant to Rule 60(b)(5) or (b)(6) of the Federal Rules of Civil Procedure.

### A. The Judgment Presumptively Should Be Terminated Because of Its Age

Permanent antitrust injunctions rarely serve to protect competition. The experience of the United States in enforcing the antitrust laws has shown that markets almost always evolve over time in response to competitive and technological changes. These changes may make the prohibitions of decades-old judgments either irrelevant to, or inconsistent with, competition. These considerations, among others, led the Antitrust Division in 1979 to establish its policy of generally including in each judgment a term automatically terminating the judgment after no more than ten years.[7] This judgment—which is 65 years old—presumptively should be terminated for the reasons that led the Antitrust Division to adopt its 1979 policy of generally limiting judgments to a term of ten years.

### B. The Judgment Is No Longer Needed to Protect Competition

In addition to age, other reasons weigh heavily in favor of terminating the judgment. Based on its examination, the Antitrust Division has determined that the judgment should be terminated for the following reasons:

---

[7] U.S. DEP'T OF JUSTICE, ANTITRUST DIVISION MANUAL at III-147 (5th ed. 2008), https://www.justice.gov/atr/division-manual.

- The judgment prohibits acts that the antitrust laws already prohibit, such as market allocation, price fixing, and engaging in group boycotts. These prohibitions amount to little more than an admonition that defendants must not violate the law. Absent such terms, defendants still are deterred from violating the law by the possibility of imprisonment, significant criminal fines, and treble damages in private follow-on litigation; a mere admonition to not violate the law adds little additional deterrence.

- One of the two corporate defendants appears to no longer exist. The Diamond Center, Inc. subsequently changed its named twice before it dissolved its New York incorporation in 2001. *See Declaration of Barry L. Creech.*

Each of these reasons support the termination of this judgment.

### C.     There Has Been No Public Opposition to Termination

The United States has provided adequate notice to the public regarding its intent to seek termination of the judgment. On April 25, 2018, the Antitrust Division issued a press release announcing its efforts to review and terminate legacy antitrust judgments, and noting that it would begin its efforts by proposing to terminate judgments entered by the federal district courts in Washington, D.C., and Alexandria, Virginia.[8] On June 7, 2019, the Antitrust Division listed the judgment in the above-captioned case on its public website, describing its intent to move to terminate the judgment.[9] The notice identified the case, linked to the judgment, and invited public comment. In the above-captioned case, however, the Division received no comments concerning the judgment.

---

[8] Press Release, Department of Justice, Department of Justice Announces Initiative to Terminate "Legacy" Antitrust Judgments, (April 25, 2018), https://www.justice.gov/opa/pr/department-justice-announces-initiative-terminate-legacy-antitrust-judgments.

[9] https://www.justice.gov/atr/JudgmentTermination, link titled "View Judgments Proposed for Termination in Southern District of New York."

10

## IV. CONCLUSION

For the foregoing reasons, the United States believes termination of the judgment in the above-captioned case is appropriate, and respectfully requests that the Court enter an order terminating it.

Respectfully submitted,

Dated: November 24, 2020         /s/ *Barry L. Creech*
                                 Barry L. Creech (DC Bar No. 421070)
                                 Trial Attorney
                                 Antitrust Division
                                 United States Department of Justice
                                 450 Fifth St., NW; Suite 4042
                                 Washington, DC 20530
                                 Telephone: (202) 307-2110
                                 Facsimile: (202) 307-5802
                                 Email: barry.creech@usdoj.gov